UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICHARD JAROSZ, CAROLE ARCHAMBEAULT,
EUGENIA BELLERE, ROBERT BRANDON,
JOHN CZECH, GERALD DIXON, ROBIN GLOVER,
PATRICK HIGGINS, WALLACE JAROSZEWSKI,
TODD KENDZIERSKI, DONNA LICHTENTHAL,
MICHAEL LoGRASSO, WILLIAM McDONELL,
ROBERT OSBORNE, ANNE OSIKA,
KATHY PERKOVICH, TAMMY SANTANA,
GAIL SCHALBERG, WILLIAM SEVERINO,
JAMES SHORT, MICHAEL STOWELL,
KENNETH ZIOLKOWSKI, and SUSAN WISE,[1]

                            Plaintiffs,
            v.                                          **DECISION AND ORDER**
                                                        12-CV-39S
AMERICAN AXLE & MANUFACTURING, INC.,
HOURLY-RATE ASSOCIATES PENSION PLAN, and
AMERICAN AXLE & MANUFACTURING, INC.,

                            Defendants.


## I. INTRODUCTION

In this action, the plaintiffs, each of whom is a qualified participant in the Defendant

American Axle & Manufacturing, Inc. Hourly-Rate Associates Pension Plan ("the Plan"),

alleged that Defendants violated the Employee Retirement Income Security Act of 1974

("ERISA"), 29 U.S.C. §§ 1001 et seq., by reducing their pension payments due under the

Plan by the amount of certain workers' compensation payments that they received.   Nine

months ago, this Court resolved the parties' cross motions for summary judgment and

---

[1] This Court dismissed the actions brought by Gerald Dixon, Patrick Higgins, and Donna Lichtenthal under Rule 25 (a) of the Federal Rules of Civil Procedure on March 12, 2019.   See Jarosz v. Am. Axle & Manuf., Inc., 372 F. Supp. 3d 163, 173-74 (W.D.N.Y. 2019).

determined that Plaintiffs are owed the full benefits to which they are entitled under the Plan (retroactive and prospective) without reduction for workers' compensation payments received, together with prejudgment interest.   See Jarosz v. Am. Axle & Manuf., Inc., 372 F. Supp. 3d 163, 182 (W.D.N.Y. 2019).   Now before this Court is Plaintiffs' Motion for Attorneys' Fees and Costs (Docket No. 79), which for the reasons stated below, is granted.

## II. BACKGROUND

On March 12, 2019, this Court granted the parties' cross-motions for summary judgment in part and denied them in part.   See Jarosz, 372 F. Supp. 3d at 168.   It granted Plaintiffs summary judgment on their ERISA claim, but otherwise denied their motion.   See id. at 178-182.   It granted Defendants summary judgment on Plaintiffs' promissory-estoppel, standard-of-review, and equitable-relief claims, but denied their motion as to Plaintiffs' ERISA claim.   Id. at 182-186.   Subsequently, this Court directed that prejudgment interest be paid at the variable federal prime interest rate and clarified that the award is against the Plan, not Defendant American Axle Manufacturing, Inc. (Docket No. 87.)

In its initial decision, this Court directed Plaintiffs to file any motion for attorneys' fees and costs within 30 days, which they did on April 11, 2019.   See Jarosz, 372 F. Supp. 3d at 186; Docket No. 79.   After full briefing, this Court took the motion under advisement on May 1, 2019.[2]   (Docket Nos. 79, 81-86.)   For the following reasons, this

---

2 At this Court's direction, the parties filed brief supplemental submissions in December 2019.   (Docket Nos. 89-91.)

Court finds that Plaintiffs are entitled to reasonable attorneys' fees and costs in the amount of $137,469.12 and $5,241.03, respectively.

## III. DISCUSSION

### A. Legal Standard

ERISA is a fee-shifting statute: a court may award reasonable attorneys' fees and costs for either party in its discretion. See 29 U.S.C. § 1132 (g)(1). Given that Congress intended fee-shifting to encourage participants and beneficiaries to enforce their statutory rights, this provision is liberally construed. See Donachie v. Liberty Life Assur. Co. of Boston, 745 F.3d 41, 45-46 (2d Cir. 2014) (internal quotations omitted); Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288, 298 (2d Cir. 2004). Awarding a prevailing party attorneys' fees and costs is therefore appropriate unless there is good reason not to. See Donachie, 745 F.3d at 47 (citing Birmingham v. SoGen-Swiss Int'l Corp. Ret. Plan, 718 F.2d 515, 523 (2d Cir. 1983)).

The United States Supreme Court has determined that a party must achieve "some degree of success on the merits" to obtain an award under § 1132 (g)(1). Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 244-45, 255, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010) (quoting Ruckelshaus v. Sierra Club, 463 U.S. 680, 694, 103 S. Ct. 3274, 77 L. Ed. 2d 938 (1983)). The party need not be a traditional "prevailing party," but it must achieve more than trivial success on the merits or a purely procedural victory. Id. at 252-255 (quoting Ruckelshaus, 463 U.S. at 688 n.9). The standard is satisfied "if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was

3

'substantial' or occurred on a 'central issue.'" Id. at 255 (quoting Ruckelshaus, 463 U.S. at 688 n.9).

"Some degree of success on the merits" is all that is necessary to establish eligibility for an award under the statute, see Hardt, 560 U.S. at 254-55, but several factors continue to guide a court's discretion whether to make such an award, see id. at n.8. See also Donachie, 745 F.3d at 46 ("After Hardt, whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." (emphasis in original)).   In this circuit, those factors are known as the "Chambless factors," which are as follows:

> (1) the degree of opposing parties' culpability or bad faith;
>
> (2) ability of opposing parties to satisfy an award of attorneys' fees;
>
> (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;
>
> (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and
>
> (5) the relative merits of the parties' positions.

Id. (citing Hardt, 560 U.S. at 249 n.1 and Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.3d 869, 872 (2d Cir. 1987)).   These factors must be considered in full if a court looks beyond "success on the merits."   See Donachie, 745 F.3d at 47 ("If a court chooses to consider factors other than a plaintiff's "success on the merits" in assessing a request for attorneys' fees, Chambless still provides the relevant framework in this Circuit,

and courts must deploy that useful framework in a manner consistent with our case law .

. . A court cannot selectively consider some factors while ignoring others.").

### B. Analysis

#### 1. Plaintiffs are eligible for an award of attorneys' fees and costs because they achieved "some degree of success on the merits."

Defendants do not dispute—and there is no question—that Plaintiffs achieved

success on the merits as they won their ERISA claim and recovered upwards of $1 million

in withheld benefits, thus vindicating their statutory rights.  (See Affidavit of Robert L.

Boreanaz, Esq. ("Boreanaz Aff."), Docket No. 79-1, ¶ 9.)   They are therefore eligible for

an award of attorneys' fees and costs under 29 U.S.C. § 1132 (g)(1).

#### 2. Consideration of the <u>Chambless</u> factors counsels in favor of awarding attorneys' fees and costs.

Plaintiffs argue that the <u>Chambless</u> factors weigh decidedly in their favor.   They

first note that Defendants are sufficiently culpable because they intentionally failed to

comply with ERISA's procedural regulations.   See <u>Jarosz</u>, 372 F. Supp. 3d at 177

(finding that the Plan's failure to comply with the requirements of 29 C.F.R. § 2560.503-1

(j)(1)-(4) was intentional, thereby requiring de novo review).   Second, they contend that

with assets exceeding $350 million, see Boreanaz Aff., ¶ 25, the Plan is well positioned

to satisfy any fee award.   Third, they maintain that a fee award is required to deter other

plan administrators from improperly denying benefits and forcing participants and

beneficiaries to endure protracted and costly litigation.   Fourth, Plaintiffs argue that their

success conferred a common benefit on the plaintiff participants in excess of $1 million.

And finally, Plaintiffs reiterate that they prevailed on the merits, winning their ERISA claim

and recovering wrongfully withheld benefits.

In contrast, Defendants argue that the <u>Chambless</u> factors do not support a full award of attorneys' fees and costs. First, they maintain that Plan administrators were not as culpable as Plaintiffs claim, but rather, engaged in a fair and open-minded evaluation of Plaintiffs' claims under the Plan, albeit reaching a different conclusion. Second, while not disclaiming the financial ability to satisfy an award, Defendants note that Plaintiffs' representation of the Plan's assets is unsubstantiated by admissible evidence and, in any event, that the Plan's assets are held to benefit all Plan participants, not just the few Plaintiffs. Third, Defendants claim that rather than having a deterrent effect, an attorneys' fee award would chill ERISA plan administrators' ability to interpret their own plans in good faith without fear of punishment. Fourth, Defendants contend that Plaintiffs did not confer a common benefit on all plan participants and beneficiaries, but rather, only for themselves, representing just .003% of the Plan participants. (<u>See</u> Declaration of Catherine Grantier Cooley ("Cooley Decl."), Docket No. 83, ¶ 20.) Finally, Defendants note that although Plaintiffs established their ERISA claim, Defendants succeeded in securing summary judgment on three of Plaintiffs' claims and the dismissal of three deceased plaintiffs.

Having considered the parties' positions and the <u>Chambless</u> factors, this Court comfortably finds that an award of attorneys' fees and costs is appropriate in this case. To begin, Defendants are sufficiently culpable. A defendant is culpable when it "violate[s] ERISA, thereby depriving plaintiffs of rights under a pension plan and violating a Congressional mandate." <u>Salovaara v. Eckert</u>, 222 F.3d 19, 28 (2d Cir. 2000).

"Culpability does not require malice, and instead considers conduct that is 'blameable' or 'at fault,' such as the denial of a meritorious benefits application." <u>Div. 1181, Amalgamated Transit Union v. N.Y.C. Dep't of Educ.</u>, No. 13-CV-9112 (PKC), 2018 WL 4757938, at *3 (S.D.N.Y. Oct. 2, 2018). Defendants violated ERISA here by failing to pay more than $1 million in benefits due under the plain language of the Plan and by intentionally failing to comply with the procedural mandates of 29 C.F.R. § 2560.503-1 (j)(1)-(4), thereby depriving Plaintiffs of proper notice. <u>See Jarosz</u>, 372 F. Supp. 3d at 176-182. While Defendants insist that they acted in good faith when resolving Plaintiffs' claims, this does not negate their clear ERISA violations.[3] Consequently, this factor weighs in favor of an award. <u>See Montefiore Med. Ctr. v. Local 272 Welfare Fund</u>, No. 09-CV-3096 (RA)(SN), No. 14-CV-10229 (RA)(SN), 2019 WL 4565099, at *4 (S.D.N.Y. Sept. 19, 2019) (finding that a fund's violation of the plain language of its plan demonstrates culpability for purposes of the first <u>Chambless</u> factor).

Second, the Plan is able to pay reasonable costs and attorneys' fees. While Defendants quibble with Plaintiffs' documentation of the Plan's considerable financial assets, they do not deny that the Plan could satisfy a reasonable award, nor have they submitted any affidavits or other documentation demonstrating an inability to pay. <u>See LaScala v. Scrufari</u>, 859 F. Supp. 2d 509, 513 (W.D.N.Y. 2012). In any event, this is not of considerable significance because a party's ability to satisfy an award is at best a

_____

3 As it relates to the first <u>Chambless</u> factor, culpability and bad faith are distinct standards. <u>See Paese v. Hartford Life & Acc. Ins. Co.</u>, 449 F.3d 435, 450-51 (2d Cir. 2006). Because this is a disjunctive factor, only one need be present. <u>See id.</u> ("Because the district court found Hartford culpable, it need not have considered explicitly whether Hartford acted in bad faith to satisfy the first part of the <u>Chambless</u> test."); <u>see also Donachie</u>, 745 F.3d at 47 (finding that either bad faith or culpability may satisfy the first factor). Here, even assuming that Defendants acted in good faith, they are nonetheless clearly culpable. <u>See Jarosz</u>, 372 F. Supp. 2d at 176-182.

neutral factor. See Alfano v. CIGNA Life Ins. Co. of N.Y., No. 07 Civ. 9661 (GEL), 2009 WL 890626, at *2 (S.D.N.Y. Apr. 2, 2009) (noting that "while a defendant's *inability* to pay an award weighs in its favor, its *ability* to pay generally is neutral in effect" (emphasis in original)) (citing Lauder v. First UNUM Life Ins. Co., 284 F.3d 375, 383 (2d Cir. 2002)).

Third, this Court finds that an award against the Plan will deter plan administrators from refusing to apply the plain language of their plans and ignoring the procedural requirements of ERISA. See, e.g., Montefiore, 2019 WL 4565099, at *4 (finding that an award of attorneys' fees "will discourage ERISA plans from ignoring their reimbursement obligations in the future"); Klimbach v. Spherion Corp., 467 F. Supp. 2d 323, 330 (W.D.N.Y. 2006) (finding that "an award of fees may deter defendants that are similarly situated to Spherion and other plan fiduciaries from interpreting their plans in such a way as to avoid the plan's true intent and directive because it is not in their economic interest to do so"); Lampert v. Metro. Life Ins. Co., No. 03 Civ. 5655 (GEL), 2004 WL 1395040, at *2 (S.D.N.Y. 2004) (holding that an "award of fees may encourage Defendant and other similarly situated parties to be more responsive to accepting meritorious positions during the administrative review process, or at least prior to the filing of a Complaint, thus preventing . . . expense on the part of the deserving claimants and avoiding needless litigation"). Thus, this factor weighs in favor of an award.

The fourth factor—whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself—is the only one that weighs against an award. There is no claim that this action involved a significant legal question involving ERISA, and indeed it did

not.  Further, the action was brought on behalf of only a small group of Plan participants and financially benefitted only them.  This factor therefore weighs against an award.

And finally, the relative merits of the parties' positions weighs decidedly in Plaintiffs' favor.  They successfully established their ERISA claim and won all the relief they sought.  That Defendants received summary judgment on Plaintiffs' alternate theories does not tip this factor in their favor.  As thoroughly explained in this Court's previous decision, Plaintiffs succeeded on their central claim, won all past due and future benefits, and vindicated their statutory rights, an achievement that far outweighs their lack of success on their alternate theories.  See Alfano, 2009 WL 890626, at *2 (finding that success on the "ultimate issue presented"—establishing an entitlement to benefits—weighed in favor of awarding attorneys' fees and costs).  This factor therefore heavily weighs in favor of an award.

Considering these factors *in toto*, with the two most heavily weighted factors—degree of culpability and relative merits—weighing in favor of an award and only the fourth weighing against, this Court finds that an award of reasonable attorneys' fees and costs is appropriate, including fees for preparation of the fee application itself.  See Donachie, 745 F.3d at 47 (explaining that although not dispositive, degree of culpability and relative merits weigh heavily); Locher, 389 F.3d at 299 (noting that failure to seek or confer a benefit on all participants and beneficiaries or to resolve a significant legal question regarding ERISA does not preclude an award of attorneys' fees); see also Cohen v. Life Ins. Co. of N. Am., 17-CV-9270 (JPO), 2019 WL 1785095, at *2 (S.D.N.Y. Apr. 24, 2019) (awarding attorneys' fees for preparation of fee application).  Reasonable attorneys' fees

and costs will therefore be awarded.

### 3. Reasonable attorneys' fees and costs in this action amount to $137,469.12 and $5,241.03, respectively.

As reflected in a 48-page billing statement (Boreanaz Aff., Exhibit A ("Billing Statement") and 3-page supplemental billing statement (Reply Affidavit of Robert Boreanaz ("Boreanaz Reply Aff."), Docket No. 86-1, Exhibit G), Plaintiffs seek $198,707.70 in legal fees and $12,723.30 in costs through April 30, 2019.[4]  And to compensate counsel "for waiting 7 years to be fully paid," see Boreanaz Aff., ¶¶ 19, 26-28, Plaintiffs' seek two more awards in the alternative: either an additional $222,631.49 in interest on attorneys' fees using the 9% rate under N.Y. C.P.L.R. § 5004 or an additional $51,641.30 by computing attorneys' fees using present billing rates.

Plaintiffs' request for these additional awards can be dispensed with rather quickly, since they provide no factual basis for either request.  Nothing before this Court establishes counsel's payment arrangement with Plaintiffs.  There is no evidence that Plaintiffs paid attorneys' fees, which might warrant an interest award to compensate them for lost economic opportunities, nor is there evidence that Plaintiffs did not pay attorneys' fees, which might warrant an award at present rates to account for the time-value of money.  See, e.g., Missouri v. Jenkins, 491 U.S. 274, 284, 109 S. Ct. 2463, 2469, 105 L. Ed. 2d 229 (1989) (observing that it is within a court's discretion to make "an

---

4 In a further supplemental submission ordered by this Court, see Docket No. 89, Plaintiffs seek additional attorneys' fees and costs beyond April 30, 2019, see Docket No. 90.  This Court's Order, however, expressly limited the supplemental submission to providing information omitted from Plaintiffs' motion.  See Docket No. 89 (limiting the supplemental submission to "setting forth the amount billed (in dollars) by each individual legal professional included in the Billing Statement filed at Docket No. 79-1").  It did not open the door to additional requests.  Consequently, billings that post-date April 30, 2019, are not considered.

appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise"). Accordingly, Plaintiffs have failed to establish that these additional awards are appropriate or warranted.

As it relates to Plaintiffs' primary attorneys' fees request, Defendants maintain that it is unreasonable both because Plaintiffs have failed to show that the requested hourly rates are in line with those permitted in this district and because the billing statement shows excessive and duplicative billing, "block billing," and vague entries. Defendants also oppose Plaintiffs' request for costs on the grounds that some are not recoverable, and many are unsubstantiated.

In this circuit, if a court finds a fee award to be appropriate, it must set a "reasonable hourly rate," which is "the rate a paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008). To determine this rate, courts must assess a variety of case-specific variables. See Adorno v. Port Auth. of N.Y. & N.J, 685 F. Supp. 2d 507, 510-11 (S.D.N.Y. 2010). Those variables include the twelve Johnson factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards

in similar cases.  See Arbor Hill, 522 F.3d at 190 (citing Johnson v. Ga. Highway Exp., Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)).   The court must also consider that a paying client would wish to spend the minimum necessary to litigate the case effectively.  See id.  Once the reasonable hourly rate is identified, the court uses it to calculate the presumptively reasonable fee by multiplying the rate by the number of hours reasonably expended.  See id.

### a. Reasonableness of the hourly rates claimed

The first issue is the reasonableness of the hourly rates claimed, which for two of the legal professionals, have periodically increased over the 8-year course of this litigation.   For example, lead counsel Robert Boreanaz, a litigation partner with 29 years' experience in ERISA matters, billed $111,277.70 for 451.72 hours from inception of the case through April 30, 2019, at hourly rates that varied from $220 to $325.   (Boreanaz Aff., ¶ 1; Billing Statement, pp. 3, 4; Supplemental Affidavit of Robert Boreanaz ("Boreanaz Supp. Aff."), Docket No. 90, Exhibit A.)   Paralegal Angela Borkowski, a litigation paralegal with 5 years' experience, billed $48,739.50 for 593.8 hours for the same time period at hourly rates that varied from $50 to $105. (Boreanaz Aff., ¶ 11 (vi); Billing Statement, pp. 3, 4; Boreanaz Supp. Aff., Exhibit A).   For ease of analysis, this Court will divide the total amount billed by the total number of hours claimed to reach an average hourly rate charged by Boreanaz and Borkowski.   See Small v. N.Y.S. Dep't of Corr. & Cmty. Supervision, 12-CV-1236S, 2019 WL 1593923, at *16-*17 (W.D.N.Y. Apr. 15, 2019).   This results in Boreanaz billing an average of about $245/hour and Borkowski billing an average of about $80/hour.

The remaining legal professionals billed at single rates.[5] Joseph Guza, who worked on this case as both a law clerk and attorney, billed $12,504 for 52.1 attorney hours at $240 per hour. (Boreanaz Aff., ¶ 11 (iv); Billing Statement, pp. 3, 4; Boreanaz Supp. Aff., Exhibit A.) Likewise, Jeffrey Novak, a partner with 8 years' litigation experience, billed $15,840 for 66 hours at $240 per hour. (Boreanaz Aff., ¶ 11 (v); Billing Statement, pp. 3, 4; Boreanaz Supp. Aff., Exhibit A.) And the five law clerks who worked on this case, including Guza, collectively billed $4,935 for 98.7 hours at $50 per hour. (Boreanaz Aff., ¶ 12; Billing Statement, pp. 3, 4; Boreanaz Supp. Aff., Exhibit A.)

Defendants do not directly challenge the reasonableness of these rates, but rather, argue that Plaintiffs have not demonstrated that the billed rates are consistent with those prevailing in this district for ERISA litigation. They also question Plaintiffs' counsel's experience and expertise in litigating ERISA matters. In response, Plaintiffs insist that their rates are reasonable and comparable to those with similar experience in ERISA cases and should therefore be approved.

Assessing the hourly rates for the attorneys above, this Court has little trouble finding that they are reasonable and within the range of rates approved in this district for ERISA attorneys of comparable experience and expertise. See, e.g., In re Eastman Kodak ERISA Litig., 213 F. Supp. 3d 503, 508-09 (W.D.N.Y. 2016) (using in-district rates of $325/hour for partners and senior counsel and $300/hour for associates to examine fees in ERISA class action); Dunda v. Aetna Life Ins. Co., No. 6:15-CV-6232 (MAT), 2016 WL 4831962, at *3 (W.D.N.Y. Sept. 15, 2016) (awarding $320/hour for partners in ERISA

---

5 For reasons discussed below, fees will not be awarded for work done by attorneys Mark Stulmaker, John Collins, and Diane Roberts, so their rates need not be assessed. (Billing Statement, pp. 3-4.)

litigation); <u>Gill v. Bausch & Lomb Supplemental Ret. Income Plan I</u>, No. 6:09-CV-6043 (MAT), 2015 WL 1632518, at *1 (W.D.N.Y. Apr. 13, 2015) (awarding $320/hour to partners and $300/hour and $290/hour for less experienced attorneys in ERISA action); <u>Jones v. Life Ins. Co. of N. Am.</u>, No. 08-CV-6586, 2011 WL 3501725, at *5 (W.D.N.Y. Aug. 10, 2011) (finding $300/hour for partners and $200/hour for junior associates to be appropriate in ERISA action).   Plaintiffs' counsel has extensive litigation and ERISA experience of almost 30 years, <u>see</u> Boreanaz Aff., ¶¶ 1, 11; Boreanaz Reply Aff., ¶¶ 11-17, and thus, considering all of the relevant variables, this Court finds that these are rates a client would willingly pay.   These attorney rates are therefore approved.

In assessing Plaintiffs' average paralegal rate of $80/hour, however, this Court finds that it is excessive.   In this district, a paralegal rate of $75/hour predominates, <u>see</u> <u>Small</u>, 2019 WL 1593923, at *17 (collecting cases), with a recent case approving $115/hour for a paralegal with 7 years' experience, <u>see</u> <u>Davis v. Shah</u>, 12-CV-6134-CJS, 2017 WL 2684100, at *2 (W.D.N.Y. June 22, 2017).   But here, Borkowski had very little experience during much of her work on this case.   She was an intern in 2013, graduated with a bachelor's degree in legal studies in 2014, and did not begin full-time work as paralegal until 2015.   (Boreanaz Reply Aff., ¶ 18.)   Given this overall lack of experience, particularly in the years when a majority of the legal work was performed, this Court finds that a flat rate of $50/hour for all of Borkowski's time is appropriate.

Applying these reasonable hourly rates, Plaintiffs' fee request through April 30, 2019, becomes $173,640.40 for 1,262.32 hours as follows:

| Name | Position | Hourly Rate | Hours Billed | Total |
|------|----------|-------------|--------------|-------|
| Boreanaz | Attorney | $245 | 451.72 | $110,671.40 |
| Guza | Attorney | $240 | 52.1 | $12,504 |
| Novak | Attorney | $240 | 66 | $15,840 |
| Borkowski | Paralegal | $50 | 593.8 | $29,690 |
| Law Clerks | | $50 | 98.7 | $4,935 |
| | | | **Total** | **Total** |
| | | | **1,262.32** | **$173,640.40** |

### b. Reasonableness of the time expended

The second issue is the reasonableness of the time expended. The party seeking attorneys' fees must support the number of hours expended with "contemporaneous time records . . . [that] specify, for each attorney, the date, the hours expended, and the nature of the work done." N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The court must exclude any hours that were "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). Indeed, all time must be reasonably expended. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012). In making this determination, the court must ask whether the attorney exercised "billing judgment." See Anderson v. Rochester–Genesee Reg'l Transp. Auth., 388 F. Supp. 2d 159, 163 (W.D.N.Y. 2005).

But "the district court is not obligated to undertake a line-by-line review of [an] extensive fee application." Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 150 (2d Cir. 2014). Rather, the court may "use a percentage deduction as a practical means of trimming fat." McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund, 450 F.3d 91, 96 (2d Cir. 2006). In that regard, "[a] court has discretion to impose an across-the-board reduction if an attorney has billed excessive, redundant, or unnecessary hours." Kreisler v. Second Ave. Diner Corp., No. 10 Civ. 7592 (RJS), 2013 WL 3965247, at *3 (S.D.N.Y. July 31, 2013) (citation omitted). An across-the-board reduction may also be warranted if the court's review is stymied by vague or excessive entries or block-billing practices. See Zuffa, LLC v. S. Beach Saloon, Inc., CV 15-6355 (ADS)(AKT), 2019 WL 1322620, at *8 (E.D.N.Y. Mar. 6, 2019) (citing Anderson v. Cty. of Suffolk, No. CV 09-1913, 2016 WL 1444594, at *6 (E.D.N.Y. Apr. 11, 2016) and collecting cases).

Defendants argue that the claimed time is unreasonable for a number of reasons. First, they maintain that Plaintiffs cannot recover for pre-suit time. Second, they contend that fees should not be permitted for excessive "office conferences," excessive travel, correction of counsel's own mistakes, time spent responding to a motion to compel, and for vague, block-billed entries. Third, Defendants seek to exclude duplicative time and time spent completing administrative tasks. Finally, they maintain that time spent on unsuccessful claims and work on unrelated matters must be deleted. Defendants set forth these points in line-by-line objections to Plaintiffs' billing statement. (See Defendants' Objections, Docket No. 83-2.)

Plaintiffs do not engage in a line-by-line defense of their billing statement, but maintain that their billing entries are not excessive, duplicative, or vague, and that all entries provide a sufficient explanation from which the court can determine reasonableness. They further maintain that pre-suit time, such as time spent drafting a complaint, is recoverable. Finally, they explain that entries reflecting contact with the UAW are reasonably related to this litigation because each plaintiff was a member of the union and therefore communication and coordination was necessary.

In evaluating the reasonableness of the time expended, this Court is first struck by counsel's use of six attorneys and five law clerks to litigate this action. This raises the question whether Plaintiffs' counsel exercised sound billing judgment. As explained in Anderson:

> In assessing whether an attorney's time was reasonably expended, the Court must ask whether the attorney exercised billing judgment. As the Supreme Court has explained, "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. In the private sector, billing judgment is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

388 F. Supp. 2d at 163 (internal quotations and citations omitted). Seeking fees for individuals who had little or no involvement in a case is indicative of poor billing judgment. See Costa v. Sears Home Improvement Prods., Inc., 212 F. Supp. 3d 412, 425 (W.D.N.Y. 2016) ("the fact that Plaintiff's counsel included time of about one hour for two separate attorneys . . . who really had no involvement in the case . . . suggests . . . that Plaintiff's

counsel has done anything but exercise billing judgment"). Paying clients would likely not be billed, nor would they tolerate being billed, for such time.

Here, Plaintiffs seek attorneys' fees for work performed by several individuals who are only peripherally related to this case. For example, through April 30, 2019, John Collins billed 7.2 hours; Mark Stulmaker billed 6.1 hours; and Diane Roberts billed just 3.9 hours. In addition, law clerks Samantha Vranic and Salvatore Prince billed only 5.9 and 2.8 hours, respectively. Given this lack of billing judgment, this Court will not award fees for work done by these individuals, each of whom is only tangentially related to this litigation. See id. at 426 (disallowing fees for individuals only tangentially involved in the case, ranging from an individual who billed .7 hours to one who billed 28.3 hours). This reduces the claimed law clerk hours by 8.7 hours.

Next, as it relates to pre-suit time, this Court notes that fees recoverable under ERISA are limited to only those incurred "in relation to a suit filed in a court of competent jurisdiction," and that "time spent drafting the complaint is properly considered part of the litigation in a district court, even though it occurs prior to filing." Peterson v. Cont'l Cas. Co., 282 F.3d 112, 121, 121 n.5 (2d Cir. 2002). Other recoverable pre-suit work includes "such preparatory work as meeting with the client," as well as "sending a demand letter and attempting . . . reasonable pre-complaint negotiating efforts." Lampert v. Metro. Life Ins. Co., No. 03 Civ. 5655, 2004 WL 1395040, at *3 (S.D.N.Y. June 21, 2004) (internal quotation marks omitted). Here, given the nature of the claims and Plaintiffs' attempts to resolve this matter pre-suit, this Court finds the modest pre-suit time claimed to be reasonable and recoverable.

Turning to the time billed for correcting Plaintiffs' mistake in filing an incomplete complaint, this Court agrees with Defendants that such time should not be billed to them. This will further reduce the law clerk hours by 1.2 hours.

Next, this Court finds no merit in Defendants' position that a further reduction should be taken for time expended on unsuccessful claims, such as Plaintiffs' promissory estoppel claim. As noted above, Plaintiffs raised alternate legal theories for the relief they requested and ultimately achieved all that they were after. A deduction because one claim was not successful in a case like this that involved a common core of facts and related legal theories is therefore not appropriate. See Klimback, 467 F. Supp. 2d at 333-34.

This Court does, however, find that a reduction for unrelated work is required. Plaintiffs make no effort to defend billings for unrelated estate work and other entries that appear mistakenly billed to this file. Time billed for communications with the UAW, however, is recoverable because it is reasonably related given the nature of the parties and the claims. A reduction of 3.2 hours for Boreanaz and 10.5 for Borkowski will therefore be taken.

Finally, this Court finds that an across-the-board reduction of 20% is warranted to trim duplicative and excessive time claimed for "office conferences," administrative tasks, and travel, and to account for vague and block-billed entries.[6] See Montefiore, 2019 WL

---

[6] A billing entry "cannot be so vague as to bar the court from being able to decipher its meaning in the context in which it appears." Lewis v. Am. Sugar Ref., Inc., No. 14-CV-02302(CRK), 2019 WL 116420, at *6 (S.D.N.Y. Jan. 2, 2019). "The practice of aggregating multiple tasks into a single billing entry, known as block billing, is not per se prohibited, but where such entries make it hard to discern the reasonableness of time allotted to a given task, courts do consider its prevalence in deciding whether reduction is appropriate." Mayo-Coleman v. Am. Sugars Holding, Inc., 2019 WL 1034078, 2019 WL 1034078, at *4 (S.D.N.Y. Mar. 5, 2019); see also Hnot v. Willis Grp. Holdings Ltd., No. 01 CIV. 6558 GEL, 2008 WL

4565099, at * 10 (observing that "court regularly reduce attorneys' fees by 50% for travel time"); Tucker v. City of N.Y., 704 F. Supp. 2d 347, 356 (S.D.N.Y. 2010) (finding entries like "conference with" or "call to" an individual impermissibly vague); Marisol A. *ex rel.* Forbes v. Giuliani, 111 F. Supp. 2d 381, 390 (S.D.N.Y. 2000) (finding administrative tasks (e.g., clerical, secretarial) to be part of overhead generally not charged to clients).   While Plaintiffs' billing statement is largely adequate and sufficiently detailed, Defendants are correct that it contains vague entries and block-billing, which makes the overall reasonableness of the listed tasks difficult to discern.   A reduction is therefore appropriate.   See Montefiore, 2019 WL 4565099, at *11 (applying 20% reduction to ensure no recovery for "clerical work, improper block-billing, and vague billing entries . . . and other unreasonably expended hours"); Ass'n of Holocaust Victims for Restitution of Artwork & Masterpieces v. Bank Austria Creditanstalt AG, No. 04 Civ. 3600, 2005 WL 3099592, at *7 (S.D.N.Y. Nov. 17, 2005) (applying 25% reduction for "instances of block billing, vagueness, and excess"); Trs. of Bricklayers & Allied Craftworkers Local 5 N.Y. Ret. v. Helmer-Cronin Constr., Inc., No. 03 Civ. 0748, 2005 WL 3789085, at *5 (S.D.N.Y. Oct. 24, 2005) (applying 20% reduction).

Accordingly, Plaintiffs' final approved attorneys' fee award is $137,469.12 as follows:

---

1166309, at *6 (S.D.N.Y. Apr. 7, 2008) ("Block-billing can make it difficult for a court to conduct its reasonableness analysis, because a single billing entry might mix tasks that are compensable with those that are not, or mix together tasks that are compensable at different rates.").

| Name | Position | Hourly Rate | Hours Billed | Total |
|------|----------|-------------|--------------|-------|
| Boreanaz | Attorney | $245 | 448.52 | $109,887.40 |
| Guza | Attorney | $240 | 52.1 | $12,504 |
| Novak | Attorney | $240 | 66 | $15,840 |
| Borkowski | Paralegal | $50 | 583.3 | $29,165 |
| Law Clerks | | $50 | 88.8 | $4,440 |
| | | | Billed Fees | **$171,836.40** |
| | | | 20% reduction | **($34,367.28)** |
| | | | Approved Fees | **$137,469.12** |

As to costs, Plaintiffs seek $12,723.30 through April 30, 2019. Defendants oppose this request on the basis that many of the costs are not recoverable and many of the entries lack sufficient specificity to allow for meaningful review. For example, Defendants challenge as unrecoverable Plaintiffs' requests for on-line legal research, document delivery, and telephone charges. They also contend that lack of detail makes it impossible to determine whether claims for service charges, airfare, video depositions, and copy costs are reasonable. Plaintiffs offer no defense of their statement of costs in the face of these objections.

Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Kindle v. Dejana, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018) (quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818 F.2d 278, 283 (2d Cir. 1987)). The party seeking to recover costs

bears the burden of adequately documenting and itemizing the costs requested. Montefiore, 2019 WL 4565099, at *12; Baker v. Power Sec. Corp., 174 F.R.D. 292, 294-95 (W.D.N.Y. 1997) ("The burden is therefore upon the party seeking costs to provide adequate documentation of its costs, and a failure to do so may result in the costs being reduced or denied."). A party is not entitled to recover costs when its application fails to provide substantiation for the costs sought. See Mendez v. Radec Corp., 907 F. Supp. 2d 353, 360 (W.D.N.Y. 2012) (denying costs that were "not adequately explained through Plaintiffs' submission"); Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014) ("[W]ith this record, the Court has no way of confirming that these costs . . . were incurred by counsel."); Joe Hand Promotions, Inc. v. Elmore, No. 11–cv-3761, 2013 WL 2352855, at *12 (E.D.N.Y. May 12, 2013) (declining to award costs due to an absence of documentation). Extrinsic proof of costs, such as invoices or receipts is favored, though a declaration under penalty of perjury representing that the claimed costs were incurred may also suffice. See Montefiore, 2019 WL 4565099, at *12 (citing Lee v. Santiago, No. 12-CV-2558 (PAE) (DF), 2013 WL 4830951, at *5 (S.D.N.Y. Sept. 10, 2013)).

Here, Plaintiffs itemized their costs and disbursements in their Billing Statement, and Attorney Boreanaz has attested under penalty of perjury that the costs set forth therein were incurred. (Boreanaz Aff., ¶ 23 and Billing Statement.) But the statement of costs contains only cursory entries—"copying expenses;" "legal records service order charge;" "delivery"—and includes $2,241.25 in videotape depositions without any explanation for why such expenses were necessary. Moreover, Plaintiffs have submitted

no response to Defendants' several objections to the claimed expenses.  Thus, this Court finds that, after deducting $2,241.25 for the unnecessary videotape depositions, the balance of Plaintiffs' requested costs should be reduced by 50%.  This Court will therefore award costs of $5,241.03.

## IV. CONCLUSION

For the reasons stated above, this Court finds that Plaintiffs achieved success on the merits of their ERISA action sufficient to entitle them to an award of attorneys' fees and costs under 29 U.S.C. § 1132 (g)(1), and that consideration of the <u>Chambless</u> factors counsels in favor of making such an award.   The Plan will therefore be directed to pay Plaintiffs $137,469.12 in attorneys' fees and $5,241.03 in costs, for a total award of $142,710.15, which this Court finds to be the reasonable fees and costs in this case.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiffs' motion for attorneys' fees and costs (Docket No. 79) is GRANTED.

FURTHER, that the Plan is directed to pay Plaintiffs $137,469.12 in attorneys' fees and $5,241.03 in costs, for a total award of $142,710.15.

SO ORDERED.


Dated:   December 11, 2019
        Buffalo, New York

                                   s/William M. Skretny
                                   WILLIAM M. SKRETNY
                                   United States District Judge